# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 18, 2010 Session

## MARK C. NOLES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No.  F-62516    David Bragg, Judge**

---

**No.  M2009-02073-CCA-R3-CD - Filed July 22, 2010**

---

Petitioner, Mark C. Noles, appeals from the post-conviction court's denial of both a petition for post-conviction relief and a petition for writ of error coram nobis.  Petitioner was convicted in Rutherford County of attempted aggravated arson in 2004 and sentenced to serve seventeen years as a Range II, multiple offender.  After an unsuccessful direct appeal, Petitioner sought post-conviction relief in the form of a pro se petition.  *See State v. Mark C. Noles*, No. M2006-015340CCA0R30CD, 2007 WL 3274422, at *1-7 (Tenn. Crim. App., at Nashville, Nov. 6, 2007), *perm. app. denied*, (Tenn. Apr. 7, 2008).  Counsel was appointed and an amended petition for post-conviction relief and petition for writ of error coram nobis were filed.  Among other things, Petitioner sought relief on the basis that he received ineffective assistance of counsel and that he recently discovered new evidence indicating that one of the main witnesses at trial had recanted his testimony.  After a hearing, the post-conviction court dismissed the petition for writ of error coram nobis as time-barred and denied post-conviction relief.  Petitioner appeals.  On appeal, the following issues are presented for review: (1) whether Petitioner received ineffective assistance of counsel at trial when trial counsel failed to advise Petitioner of the right to allocution, failed to subpoena a witness, and failed on appeal to contest the jury instructions; (2) whether the post-conviction court improperly refused to recuse itself from the post-conviction proceedings; (3) whether the post-conviction court improperly refused to allow Petitioner to present two witnesses at the post-conviction hearing; and (4) whether the post-conviction court improperly dismissed the petition for writ of error coram nobis.  After a thorough review, we conclude that the post-conviction court properly dismissed the writ of error coram nobis as untimely.  Further, we determine that the post-conviction court did not abuse its discretion by refusing to recuse itself; that the post-conviction court did not deny Petitioner the right to present witnesses at the post-conviction hearing; and that  Petitioner has failed to show that he received ineffective assistance of counsel.  Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., JOINED.

Ben Hall McFarlin, III, Murfreesboro, Tennessee, for the appellant, Mark C. Noles.

Robert E. Cooper, Jr., Attorney General and Reporter, Lacy Wilber, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General, and Trevor H. Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

Petitioner was indicted by the Rutherford County Grand Jury in October of 2002 for aggravated arson of a triplex apartment building in Murfreesboro. At trial, the following testimony, as summarized by this Court on direct appeal, led to Petitioner's conviction for attempted aggravated arson:

> At trial, there were multiple accounts of the events leading up to the fire. The jury heard testimony from Malinda Ann Stacey, one of the occupants of the triplex apartment building on East Northfield Boulevard in Murfreesboro. Ms. Stacey's apartment was located on the second story of the building and was accessible by an interior staircase in the center of the building. At the time of the fire, Ms. Stacey testified that she was involved in a personal relationship with Jason Walz. Ms. Stacey testified that she had known [Petitioner] for quite sometime, but had not spent a lot of time around [Petitioner] until he started dating Jodi Wilkinson. Ms. Stacey testified that in the days preceding the fire, Kelly Rose, Jodi Wilkinson, Hope Dennis and Ms. Dennis' boyfriend Paul Fetty stayed at her apartment. [Petitioner's] pit bull dog was also staying at the apartment. The dog was sick, often throwing up blood and having blood in its bowel movements. Ms. Stacey told [Petitioner] that he needed to take the dog somewhere else.
>
> On August 12, 2002, Ms. Stacey witnessed her downstairs neighbor, David, give seventy-five dollars to [Petitioner] for the purpose of buying cocaine. [Petitioner] took the money, but never gave David any drugs. According to Ms. Stacey, she, Hope Dennis, and Ms. Wilkinson shaved

[Petitioner's] dog in retaliation. After shaving the dog, Ms. Dennis wrote, "You're next, bitch" on the dog with a black magic marker.

*Id.* at *1. After that incident, Ms. Stacey received multiple threatening phone calls. *Id.* Later that day, Petitioner came to the apartment with a large group of people. While they were at her apartment, Ms. Stacey "heard one of the people in the group say, 'We'll just come back and burn her MF'ing house down.'" *Id.* Ms. Stacey left her apartment sometime later. When she returned after dark, her apartment was on fire. *Id.* at *2.

Amanda Howard testified at trial that she was present when Petitioner was at Ms. Stacey's apartment. She left with a group to go to a gas station to get gas. They left the gas station, went back by Ms. Stacey's apartment, and it was already on fire. *Id.* Ms. Howard stated that she:

> drove back to her trailer and [Petitioner], Mr. Anderson, Mr. Walz and Eric Taylor were already there. Mr. Taylor had burns on his face and Mr. Anderson was applying cold rags to the wounds. Ms. Howard stated that [Petitioner] and Mr. Walz were sitting on the couch talking about the fire at Ms. Stacey's apartment, acting "like it was fun and jokes." Ms. Howard heard [Petitioner] say that "[h]e threw the bottle and hit Eric with it. That's why he got burned." Ms. Howard also heard [Petitioner] say that "they ran up the stairs and started throwing stuff in the house." [Petitioner] threatened the group, telling them that he would hurt them if they said anything to the fire department or police.

*Id.* Kelly Rose testified she "heard [Petitioner] say that 'he was going to have us beat up and he was going to beat us up, that he was going to burn Malinda's [Ms. Stacey's] house down.'" *Id.* at *3.

Angel Whitaker Smith, a woman who was dating Mr. Walz and knew that Ms. Stacey and Mr. Walz had dated in the past, was responsible for going to Ms. Stacey's apartment to pick up Petitioner's dog after it had been shaved. Ms. Smith thought that Petitioner was "very angry" when he saw his dog. *Id.* at *3. She testified that Petitioner and some men went to the gas station to get gas. *Id.* at *4. After they left the gas station, the apartment was on fire. *Id.* She testified that Petitioner told her he set the apartment on fire. *Id.*

Laura Hedgepath also testified at trial. Her testimony was consistent with Ms. Smith's. Next, the following evidence was presented:

> Eric Taylor testified that he suffered burns on August 12, 2002, when [Petitioner] threw a "cocktail bomb" at Malinda Stacey's apartment. He did

-3-

not remember what the confrontation between the two groups was about, but remembered going to the gas station with [Petitioner] and others. At the gas station, they purchased "forty cents' worth of gas in two bottles." The bottles also had rags stuffed in them. After leaving the gas station, they went to Malinda Stacey's apartment.

*Id.* at *5. During the investigation, a videotape was recovered from a nearby gas station's surveillance camera on the night of the fire. The videotape showed Andy Anderson buying one dollar's worth of gas. Four minutes later, the tape shows Ms. Hedgepath and another woman buying two beers and two dollar's worth of gas. *Id.* at *6.

Petitioner was convicted of attempted aggravated arson and sentenced, as a Range II, multiple offender, to seventeen years in incarceration. On direct appeal, Petitioner presented the following issues: (1) whether the evidence was sufficient to support the verdict; (2) whether the trial court improperly instructed the jury on accomplice testimony; and (3) whether the trial court denied the appellant the right to allocution at the sentencing hearing. *Id.* at *7.

This Court determined that the evidence was sufficient to support the convictions, specifically determining that the accomplice testimony was sufficiently corroborated. *Id.* at *9. In examining the jury instruction issue, this Court noted that Petitioner failed to request a special instruction on accomplice testimony at trial and further failed to include the issue in a motion for new trial. *Id.* Despite these deficiencies, we reviewed the issue for plain error. *Id.* We determined that there was no plain error where Petitioner failed to demonstrate "that he did not waive the issue for tactical reasons or that consideration of the error is necessary to do substantial justice. Furthermore, [Petitioner did not show] that a clear and unequivocal rule of law was breached by the trial court in not instructing the jury as to which witnesses should be considered accomplices." *Id.* at *11.

Subsequently, Petitioner sought review with the Tennessee Supreme Court. Petitioner's application for permission to appeal was denied on April 7, 2008. On December 22, 2008, Petitioner filed a pro se petition for post-conviction relief. In that petition, Petitioner argued that he received ineffective assistance of counsel and that there was newly discovered evidence that would prove his innocence. Specifically, Petitioner argued that counsel was ineffective for failing to seek an accomplice instruction for the jury and failing to inform Petitioner of the right of allocution at sentencing. Additionally, Petitioner alleged that a letter from co-defendant Eric Taylor indicated that his testimony at trial was perjured. Petitioner also reiterated the same issues that were raised in the direct appeal. The post-conviction court reviewed the petition and appointed counsel to represent Petitioner.

On January 28, 2009, Petitioner filed an amended petition for post-conviction relief and petition for writ of error coram nobis. In this petition, Petitioner reiterated the issues raised in the petition for post-conviction relief and argued that trial counsel failed to adequately investigate and prepare for the case and that the prosecution withheld exculpatory evidence. Additionally, Petitioner argued that newly discovered evidence proved his innocence.

The post-conviction court held a hearing on the petition for post-conviction relief and petition for writ of error coram nobis. At the hearing, the post-conviction court first addressed the timeliness of the petition for writ of error coram nobis. Petitioner acknowledged that the writ was filed beyond the one-year statute of limitations but argued that he did not receive a letter from co-defendant Eric Taylor until July of 2007, in which Mr. Taylor recanted his testimony. The post-conviction court dismissed the petition, determining that due process concerns did not toll the statute of limitations. The post-conviction court was not satisfied that Mr. Taylor's trial testimony was false and that the statements made in the letter to Petitioner were true. Further, the post-conviction court found that Petitioner was not surprised by Mr. Taylor's trial testimony or unable to know the falsity of the testimony at trial because Petitioner was "present at the events" which gave rise to the testimony. In other words, Petitioner could not show that he was without fault in failing to present the evidence in a more timely fashion. Finally, the post-conviction court determined that the jury would not have reached a different result even if Mr. Taylor's testimony at trial would have been different. In other words, there was adequate evidence of Petitioner's involvement even when excluding the testimony of Mr. Taylor. The post-conviction court held that Mr. Taylor's testimony was not relevant at the hearing but allowed Petitioner to introduce Mr. Taylor's letter as an exhibit.

As the hearing continued on the issues presented in the post-conviction petition, Petitioner informed the post-conviction court that he had subpoenaed several witnesses to testify, including trial counsel, Mr. Taylor, and Jason Walz. After opening statements, the post-conviction court informed the parties that, prior to becoming a judge, he had been appointed to represent Mr. Walz on his charge of aggravated arson stemming from the same incident.

Petitioner asked the post-conviction court to recuse itself from the hearing. Specifically, Petitioner argued that the post-conviction court could have been privy to information he received during his representation of Mr. Walz that would affect his ability to be impartial during the post-conviction proceedings. The post-conviction court stated that it was merely rendering an opinion on whether Petitioner received ineffective assistance of counsel rather than reviewing the merits of the trial. Further, the post-conviction court noted that this Court had reviewed the sufficiency of the evidence on direct appeal. The post-

conviction court ultimately determined that it would not recuse itself and would reserve the question of whether Mr. Walz could testify during the post-conviction proceedings.

Petitioner took the stand at the post-conviction hearing. According to Petitioner, trial counsel was appointed to represent him at trial. Petitioner complained that trial counsel failed to subpoena all the witnesses that he wanted present at trial. In particular, Petitioner wanted Mr. Walz to testify at trial. Petitioner felt that if Mr. Walz testified face-to-face with Petitioner he would tell "the truth" that Petitioner did not start the fire at the apartment. Petitioner recalled that trial counsel "might" have suggested that he "separate himself" from Mr. Walz.

The State introduced the testimony from the guilty plea hearing wherein Mr. Walz pled guilty to the charges. At that hearing, Mr. Walz named Petitioner as a participant in the arson. Petitioner conceded that the guilty plea transcript would not have been beneficial at trial but argued that the jury could have discredited the testimony from the guilty plea hearing if Mr. Walz were to testify differently at trial.

Petitioner complained that the jury instructions regarding accomplices should have specifically named the witnesses that were accomplices. According to Petitioner, this would have also required the trial court to instruct the jury regarding corroboration of accomplice testimony. Petitioner claimed that trial counsel did not inform him that accomplice testimony had to be corroborated.

On cross-examination, Petitioner acknowledged that trial counsel cross-examined the witnesses and brought out inconsistencies in their statements regarding Petitioner's involvement in the arson. Trial counsel also brought out that at least one of the accomplices had charges pending against them related to the apartment fire and that another accomplice had a prior criminal record. Petitioner stated, however, that the jury instructions were confusing to the jury.

With regard to sentencing, Petitioner alleged that trial counsel failed to inform him that he could present character witnesses or that he had a right to allocution. Petitioner found out about this right prior to the filing of the amended motion for new trial and complained to trial counsel about his failure to inform him of this right. Petitioner claims that he asked trial counsel to include this issue in the amended motion for new trial and trial counsel failed to do so. Petitioner acknowledged that trial counsel made a statement to the trial court during the sentencing hearing on his behalf. However, Petitioner insisted that if given the opportunity to give an allocution at the sentencing hearing, he could have addressed "things" in his presentence report and could have informed the trial court of his Bible studies.

Petitioner testified that character witnesses could have increased mitigating factors so that he could receive a shorter sentence from the trial court. Petitioner did not present any character witnesses at the post-conviction hearing, though he named several witnesses that he would have called.

Petitioner acknowledged that he had multiple convictions including: aggravated assault, possession of contraband in a workhouse, burglary of a vehicle, carrying a weapon with the intent to go armed in public, misdemeanor theft, contributing to the delinquency of a minor, driving under the influence, public intoxication, criminal trespass, and others. Petitioner also admitted that he had at least five prior felonies.

Trial counsel also testified at the post-conviction hearing. He acknowledged that he was appointed to represent Petitioner after another attorney withdrew from representation. Trial counsel had been practicing law since 1994 and devoted over 85% of his practice to criminal law. Prior to being appointed, trial counsel was aware of an offer from the State for a ten-year sentence in exchange for a guilty plea. Trial counsel attempted to "get that offer back on the table" when he was appointed to represent Petitioner, but the State refused to make another offer.

Trial counsel could not recall the specific reason for failing to subpoena Mr. Walz. Trial counsel specifically stated that he was aware of Mr. Walz's testimony at the guilty plea hearing that implicated Petitioner and felt that he would have been "nervous" to call him as a witness at trial.

Trial counsel testified that he did not request a jury instruction that would have specifically listed the accomplices. He expressed regret over this decision and vowed to make such a request in all future cases where the issue arose. Trial counsel stated that he did "vigorously" cross-examine the accomplices at trial, attacking their credibility. Further, trial counsel noted that the trial court gave an accomplice instruction to the jury but that the instruction did not list the accomplices' names.

Trial counsel also admitted that prior to Petitioner's case he was not familiar with an allocution. Additionally, he admitted that he failed to raise the issue in the motion for new trial but attempted to raise it at the hearing. Trial counsel also informed the post-conviction court that Petitioner's fiancée worked for him during the time of the trial, and she was an excellent worker. They were not engaged at the time.

Trial counsel did not recall Petitioner asking to present specific character witnesses at the sentencing hearing. Petitioner insisted on presenting church certificates that he had

received for participating in certain Bible study classes as exhibits at the hearing. Trial counsel introduced these as exhibits at the sentencing hearing as requested.

Petitioner's wife also testified at the hearing. She had been a legal assistant for trial counsel for three years. According to Mrs. Noles, trial counsel neglected his clients because of his tumultuous personal relationship. Specifically, Mrs. Noles recalled trial counsel fighting with his girlfriend in the days preceding Petitioner's trial.

At the conclusion of the hearing, Petitioner again sought to introduce the testimony of Mr. Walz. The trial court found that the testimony would not be "relevant" but told Petitioner that he could make an offer of proof. Petitioner did not call Mr. Walz, instead opting merely to introduce the letter of Mr. Taylor as an exhibit to the hearing.

After hearing the testimony, the post-conviction court denied post-conviction relief. Specifically, the post-conviction court determined that Petitioner failed to show that trial counsel rendered ineffective assistance of counsel for failing to inform Petitioner of the right to allocution. Petitioner raised this issue on direct appeal and was unsuccessful. Moreover, the post-conviction court concluded that Petitioner failed to show how the outcome of his sentencing hearing would have been different had he made an allocution at the sentencing hearing.

The post-conviction court also found that Petitioner failed to show that trial counsel was ineffective for failing to seek a jury instruction that would specify which witnesses were accomplices. Specifically, the post-conviction court noted that Petitioner failed to show that the jury was confused or that naming some of the witnesses as accomplices would have changed the outcome of the trial.

Next, the post-conviction court determined that Petitioner failed to show that trial counsel was ineffective for failing to call Mr. Walz as a witness. The court accredited trial counsel's testimony in that trial counsel was aware of Mr. Walz's statements that implicated Petitioner in the crime. The post-conviction court concluded that Petitioner failed to establish prejudice and "offered no evidence to show how Mr. Walz's testimony would be both favorable and material." Additionally, the court noted that Petitioner failed to show that the testimony would have changed the outcome of the trial.

Petitioner appeals the dismissal of the post-conviction petition and the petition for writ of error coram nobis. Further, Petitioner insists that the post-conviction court improperly refused to recuse itself from the post-conviction proceedings and improperly refused to allow Petitioner to present two witnesses at the post-conviction hearing.

*Analysis*

*Writ of Error Coram Nobis*

First, Petitioner claims on appeal that the post-conviction court improperly dismissed the petition for writ of error coram nobis. Specifically, Petitioner contends that the post-conviction court erred by concluding that the statute of limitations had run when he did not learn of the recanted testimony until July 25, 2007, three days prior to the expiration of the statute of limitations as calculated by the post-conviction court. Petitioner argues that because his direct appeal was pending at this time he could not seek relief via the writ until April 7, 2008, the day on which the supreme court denied permission to appeal. The State disagrees, arguing that the post-conviction court properly dismissed the petition as untimely and that Petitioner failed to show why due process should toll the statute of limitations.

Relief by petition for writ of error coram nobis is provided for in Tennessee Code Annotated section 40-26-105. That statute provides, in pertinent part:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

The writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). The "purpose of this remedy 'is to bring to the attention of the court some fact unknown to the court which if known would have resulted in a different judgment.'" *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1996)). The decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. *Teague v. State*, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988), *overruled on other grounds by Mixon*, 983 S.W.2d at 671 n.3.

A petition for writ of error coram nobis must relate: (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner. *Freshwater v. State*, 160 S.W.3d 548, 553 (Tenn. Crim. App. 2004); *Hart*, 911 S.W.2d at 374-75. To be successful on a petition for a writ of error coram nobis, "the standard to be applied is whether the new evidence, if presented to the jury, may have resulted in a different outcome . . . ." *State v. Vasquez*, 221 S.W.3d 514, 526 (Tenn. 2007).

A petition for writ of error coram nobis must usually be filed within one year after the judgment becomes final. *See* T.C.A. § 27-7-103; *Freshwater*, 160 S.W.3d at 553; *Mixon*, 983 S.W.2d at 670. It has been determined that a judgment becomes final, for purposes of coram nobis relief, thirty days after the entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. *Mixon*, 983 S.W.2d at 670. It has been explained that:

> The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories, as are the grounds for reopening a post-conviction petition. Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. Coram nobis claims therefore are singularly fact-intensive. Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing. The coram nobis statute also does not contain provisions for summary disposition or expedited appeals . . . . Although coram nobis claims also are governed by a one-year statute of limitations, the State bears the burden of raising the bar of the statute of limitations as an affirmative defense. *See Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995).

*Harris v. State*, 102 S.W.3d 587, 592-93 (Tenn. 2003).

We agree with the State's assessment that Petitioner's petition for writ of error coram nobis is untimely. Petitioner's motion for new trial was denied on June 28, 2006. Petitioner did not seek coram nobis relief until January of 2009, almost three years later. Petitioner argues that he did not learn of the evidence until after July 25, 2007, when he received the letter regarding the recanted testimony. Further, Petitioner argues that he could not seek "post-conviction" relief because his appeal was pending. Petitioner urges this Court to consider the petition timely because it was filed within one year of the date that his direct

appeal was concluded. Petitioner sought relief via the writ of error coram nobis, not post-conviction relief. Petitioner does not present sufficient evidence to establish that the statute of limitations should be tolled to permit the late filing of his petition as the petitioner has not shown that he was "without fault" in failing to previously present this evidence. T.C.A. § 40-26-105; *Mixon*, 983 S.W.2d at 668. We agree with the trial court that Petitioner's petition for the writ of error coram nobis was untimely and that it was properly dismissed as such.

*Recusal of the Post-conviction Court*

Petitioner next contends that the post-conviction court erred in refusing to recuse itself from the proceedings "despite his representation of [Petitioner's] co-defendant, Jason Walz." The State counters that "[u]nder either a subjective or objective standard, the post-conviction court did not abuse its discretion when it refused to recuse itself."

When deciding whether to grant a motion for recusal, a trial judge exercises his or her discretion. *Caruthers v. State*, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991). This Court may reverse the trial judge's decision only when the judge has clearly abused that discretionary authority. *State v. Cash*, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993). The judge should recuse himself or herself whenever the judge's "impartiality [could] reasonably be questioned." *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994) (quoting Code of Judicial Conduct, Canon 3(c) (now part of Tenn. Sup. Ct. R. 10, Canon 3(E)(1)). Furthermore, recusal is appropriate "when a person of ordinary prudence in the judge's position . . . would find a reasonable basis for questioning the judge's impartiality." *Id.* (footnote omitted). The trial judge must determine whether he or she has a subjective bias against the defendant and whether the trial judge's impartiality could reasonably be questioned under an objective standard. *State v. Connors*, 995 S.W.2d 146, 148 (Tenn. Crim. App. 1998).

The trial judge denied Petitioner's motion for recusal herein after engaging in this two-prong analysis. He determined that he had neither a subjective bias nor an objective appearance of bias and could therefore continue the trial with impartiality. Further, the trial court commented that the proceedings were dealing with "ineffective assistance of counsel" and related to Petitioner's trial counsel, there was no reason for recusal. The trial court continued by stating:

[T]he representation of Mr. Walz was concluded on January 13, 2003, eighteen months before the trial of the petitioner. The post-conviction hearing judge did not participate in any evidentiary hearing held prior to Mr. Walz entering his plea and the post-conviction hearing judge never had any communication

-11-

with the petitioner during the course of his representation of Mr. Walz. The Court finds no basis for disqualification.

Nothing in the record belies these findings and thus we find the post-conviction court did not abuse its discretion in declining to recuse.

*Due Process*

Petitioner argues on appeal that he was denied due process of law when the post-conviction court refused to allow him to present the testimony of Mr. Walz and Mr. Taylor at the hearing. Specifically, Petitioner argues that the post-conviction court erroneously determined that the testimony was irrelevant. The State argues that the post-conviction court did not abuse its discretion.

"All that due process requires in the post-conviction setting is that the defendant had 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). There is no proof in the record that Petitioner was prohibited from presenting witnesses on his behalf. First, we note that Petitioner sought to introduce Mr. Taylor's testimony with regard to the writ of error coram nobis. We have already determined that the post-conviction court properly dismissed the writ as untimely. Further, the post-conviction court gave Petitioner the opportunity to present Mr. Walz's testimony through an offer of proof, and Petitioner declined to do so. A petitioner is not entitled in a post-conviction proceeding to be allowed to present every witness he wishes to call. *See Paul Graham Manning v. State*, No. M2005-02876-CCA-R3-PC, 2007 WL 4115487, at *12 (Tenn. Crim. App, at Nashville, Nov. 13, 2007), *perm. app. denied*, (Tenn. Apr. 7, 2008). Based upon our review of the record, it is clear that Petitioner was extended an ample opportunity to present his arguments and evidence in the evidentiary hearing. *See House*, 911 S.W.2d at 711. Petitioner is not entitled to relief on this issue.

*Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the

result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Petitioner complains that trial counsel was ineffective for failing to request a jury instruction that listed the accomplices to the crime. During trial, the trial court instructed the jury on accomplice testimony. The jury instruction did not specify the names of the accomplices. Trial counsel failed to raise it in a motion for new trial or on appeal. On appeal, this Court declined to review the issue for plain error. *State v. Mark C. Noles*, 2007 WL 3274422, at *11. In finding that this issue was not subject to plain error review this Court found review of the issue was not necessary to do substantial justice. This is essentially saying the issue would not likely change the result of the trial. Thus, Petitioner has failed to demonstrate prejudice from trial counsel's performance with respect to this issue. Petitioner is not entitled to relief on this issue.

Next, Petitioner complains that trial counsel was ineffective for failing to inform Petitioner that he could present an allocution at sentencing. Trial counsel admitted that he was unaware Petitioner could have given an allocution and apologized for his failure. The post-conviction court determined that Petitioner failed to show prejudice by trial counsel's failure. Additionally, the court noted that Petitioner had an extensive criminal record and even though Petitioner did not make a personal statement at sentencing, trial counsel managed to introduce certificates that Petitioner received for completion of Bible study classes as exhibits at the sentencing hearing. Petitioner has failed to satisfy his burden. He

has not shown that he was prejudiced by trial counsel's failure to inform him of the right of allocution. Petitioner is not entitled to relief on this issue.

Petitioner also complains that trial counsel was ineffective for failing to call Mr. Walz as a trial witness. Prior to trial, trial counsel reviewed Mr. Walz's testimony from his guilty plea, in which he implicated Petitioner as the person who threw the fire bomb. At the post-conviction hearing, trial counsel testified that he did not want to call Mr. Walz as a witness at trial because he was not certain what Mr. Walz would say. In other words, trial counsel made a strategic decision not to call Mr. Walz. This Court cannot second-guess a well-informed, strategic decision made after adequate preparation. *See Henley*, 960 S.W.2d at 579. Further, Petitioner has failed to show prejudice. He neglected to call Mr. Walz to testify at the post-conviction hearing, even after the post-conviction court gave him the opportunity to present the evidence in a proffer of proof. In the absence of such a proffer this Court cannot say that Waltz's testimony even might have changed the results at trial. Petitioner is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE